UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

AMY B.,[1]

          Plaintiff,

v.

FRANK BISIGNANO,[2]

          Defendant.

CIVIL ACTION NO. 1:24-CV-02091

(MEHALCHICK, J.)
(LATELLA, M.J.)

## REPORT AND RECOMMENDATION

This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Amy B.'s claims for a period of disability benefits under Title XVI of the

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial. *See Tammy H. v. Frank Bisignano, Commissioner of Social Security*, No. 1:24-cv-00838, Docket No. 19 at n.1 (M.D. Pa. Aug. 27, 2025).

[2] "In an official-capacity action in federal court, death or replacement of the named official will result in automatic substitution of the official's successor in office." *Kentucky v. Graham*, 473 U.S. 159, 166 n.11 (1985) (citing Fed. R. Civ. P. 25(d)(1)). Frank Bisignano was sworn in as the Commissioner of Social Security on May 7, 2025. Accordingly, we have substituted him as the Defendant in this action.

Social Security Act. (Doc. 1; Doc. 5-3 at 11). This matter was referred to the undersigned federal magistrate judge for preparation of a report and recommendation. For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, we respectfully recommend that the decision of the administrative law judge be vacated and remanded.

## 1. BACKGROUND AND PROCEDURAL HISTORY

On August 3, 2021, Plaintiff Amy B. ("Ms. B.") filed an application for Title XVI benefits. (Doc. 5-2 at 18)[3]. In her application, Ms. B. claimed disability beginning April 27, 2021. (Id.). The Social Security Administration initially denied Ms. B.'s claims on May 27, 2022, and again upon reconsideration on December 6, 2022. (Id.). Ms. B. filed a request for a hearing before an Administrative Law Judge ("ALJ") on January 23, 2023. (Id.). ALJ Sharon Zanotto conducted the requested hearing on August 17, 2023. (Id.).

In a written opinion dated February 28, 2024, ALJ Elizabeth Ebner determined that Ms. B. is not disabled and therefore not entitled to the benefits sought. (Id. at 30). Ms. B. appealed the ALJ's decision to the Appeals Council,

---

[3] For the sake of clarity, we refer to the NextGen/ECF document numbers and pagination in our citations.

who, on October 8, 2024, denied Ms. B.'s request for review.  (Doc. 5-2 at 2).  On December 4, 2024, Ms. B. filed the instant action.  (Doc. 1).  The Commissioner responded on January 22, 2025, providing the requisite transcripts from the disability proceedings on August 17, 2023.  (Docs. 4, 5).  The parties then filed their respective briefs (Docs. 13, 14, 19), with Plaintiff alleging three errors warranting reversal or remand.  (Doc. 13 at 1).

## 2. THE ALJ'S DECISION

In a decision dated February 28, 2024, the ALJ determined Ms. B. "has not been under a disability, as defined in the Social Security Act since August 3, 2021, the date the application was filed."  (Doc. 5-2 at 30).  The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act.  *See* 20 C.F.R. § 416.920(a).

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA").  20 C.F.R § 416.920(a)(4)(i).  If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience.  20 C.F.R. § 416.920(b).  SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit.  20 C.F.R. § 416.972.  In making this determination, the ALJ must consider only the earnings of the claimant.  20 C.F.R. § 416.974.  The ALJ determined Ms.

B. "has not engaged in [SGA] since August 3, 2021, the application date." (Doc. 5-2 at 20). Thus, the ALJ's analysis proceeded to step two.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. § 416.920(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step.

The ALJ found Ms. B. has the following severe impairments: obesity, Patent Foramen Ovale (PFO), migraine headaches, anxiety, and depression. (Doc. 5-2 at 20). The ALJ also identified Ms. B.'s non-severe impairments as: gastroesophageal reflux disease (GERD), vasovagal syncope, and obstructive sleep apnea. (Doc. 5-2 at 20).

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in 20 C.F.R. § 416.920(a)(4)(iii); 416.925; 416.926. If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 416.920(d). The ALJ determined that none of Ms.

B.'s impairments, considered individually or in combination, met or equaled a Listing. (Doc. 5-2 at 21). The ALJ stated that she considered whether Ms. B.'s migraine condition meets or equals the requirements of any pertinent physical or mental listing in accordance with SSR 19-4p, but that the signs, symptoms, and laboratory findings are not of such severity as those found in any listing. (*Id*.). The ALJ likewise found that the signs, symptoms, and laboratory findings of Ms. B.'s obesity are not of such severity as those found in any listing. (*Id*.). Finally, the ALJ stated that the severity of Ms. B.'s mental health impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. (*Id*.).

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence provided. The ALJ determined that:

> [Ms. B]. has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can never climb ladders, ropes, or scaffolds. The claimant should avoid all jobs requiring her to taste or smell various flavors or odors. The claimant should avoid all exposure to dust, fumes, odors, gases, chemicals, hot or cold temperature extremes, wetness, and humidity; and the claimant can tolerate no louder than a moderate voice level. The claimant should avoid all exposure to moving machinery, sharp tools, open flames, and bodies of water. Finally, the claimant is limited to understanding, remembering, and carrying out tasks involving simple instructions and using judgment to make simple decisions,

> with no more than occasional work setting process and tool changes.

(Doc. 5-2 at 23).

Having assessed a claimant's RFC, at step four the ALJ must determine whether the claimant has the RFC to perform the requirements of their past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).  A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  Past relevant work is defined as work the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it.  20 C.F.R. § 416.960(b).  If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step.

The ALJ determined that Ms. B.is unable to perform past relevant work. (Doc. 5-2 at 29).  The ALJ noted past relevant work as a Substance Abuse Counselor, but the demands of that work exceeded Ms. B.'s RFC.  (*Id*.).

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work.  20 C.F.R. § 416.920(a)(4)(iv).  These factors are not considered when evaluating a claimant's ability to perform past relevant work.  20 C.F.R. § 416.960(b)(3).  If a claimant has the ability to make an adjustment to other work, they will not be considered disabled.  20 C.F.R. § 416.920(a)(4)(iv).

The ALJ made vocational determinations that on the date of her application, Ms. B. was 24 years, defined as a younger individual age 18-49 by the Regulations. 20 C.F.R. § 404.1563. (Doc. 5-2 at 29). The ALJ also noted that Ms. B. "has at least a high school education" as considered in 20 C.F.R. § 416.964. (Doc. 7-2 at 35). The ALJ determined that upon consideration of these factors, Ms. B.'s RFC, and the testimony of a vocational expert, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id*.). The ALJ specifically identified occupations of marker, cashier II, and routing clerk. (*Id*. at 30).

As a result of this analysis, the ALJ determined that Ms. B. was not disabled and denied her applications for benefits. (*Id*.).

### 3. STANDARD OF REVIEW

In order to receive benefits under Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other

substantial gainful activity that exists in significant numbers in the national economy.  20 C.F.R. § 416.905(a).

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process.  20 C.F.R. § 416.920(a).  Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience.  20 C.F.R. § 416.920(a).  The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 416.912(a).  Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience.  20 C.F.R. § 416.912(f).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the

findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether Ms. B.is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application

of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at \*1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

## 4. DISCUSSION

Ms. B. argues that the ALJ erred in three ways. First, she claims that substantial evidence does not support the ALJ's step three analysis regarding her migraine headaches. (Doc. 13 at 1). Second, she argues that the ALJ failed to address her need to lie down during the day. (*Id.*). Finally, she argues that substantial evidence does not support the ALJ's mental RFC assessment. (*Id.*).

In response, the Commissioner maintains that Ms. B. "has not established that her migraine headaches individually or in combination satisfy the heightened requirements of any listing." (Doc. 14 at 10). Regarding Plaintiff's other two claims, the Commissioner argues that the ALJ's RFC was supported by substantial evidence as the ALJ "properly considered such factors as the objective medical evidence, medical opinions, daily activities, type of pain/symptoms, precipitating

and aggravating factors, medication and other treatment, any other measures used to relief symptoms, and any other factors concerning functional limitations, in determining that Plaintiff's statements were inconsistent with the evidence of record." (*Id*. at 12).

A. THE ALJ'S CONSIDERATION OF MS. B.'S MIGRAINES AT STEP 3

Appendix 1 of 20 C.F.R. Part 404, Subpart P ("Listing of Impairments") describes, for each major body system, impairments that the Commissioner considers to be severe enough to prevent a claimant from doing any gainful activity regardless of the claimant's age, education, or work experience. *Bowen v. Yuckert,* 482 U.S. 137, 153 (1987); *Knepp v. Apfel,* 204 F.3d 78, 85 (3d Cir. 2000).

"Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "[T]he medical criteria defining the listed impairments" is set "at a higher level of severity than the statutory standard." *Id.* at 532. "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* "The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* If a claimant's impairment meets or is equivalent to a listed impairment at step three of the analysis,

then the claimant "is *per se* disabled and no further analysis is necessary." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). But "[i]f a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five." *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

The Third Circuit requires the ALJ to set forth the reasons for his or her determination as to whether a claimant's condition meets or equals a listing. *Burnett*, 220 F.3d at 119. The purpose of this requirement "is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett*, 220 F.3d at 120). "[A]n ALJ need not 'use particular language or adhere to a particular format in conducting analysis' so long as 'the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [claimant] did not meet the requirements for any [L]isting.'" *Gonzalez v. Saul*, No. 1:17-cv-02524 (PAZ), 2019 WL 13401378, *12 (D.N.J. Oct. 31, 2019) (alteration in original) (quoting *Jones*, 364 F.3d at 505).

There is no listing for migraine headaches. *See Soc. Sec. Ruling 19-4p, Titles II & XVI: Evaluating Cases Involving Primary Headache Disorders*, 2019 WL 4169635 (S.S.A. Aug. 26, 2019) ("SSR 19-4p") ("Primary headache disorder is not a listed impairment in the Listing of Impairments (listings)."). However, "SSR 19-4p explains how primary headache disorders, like migraines, are evaluated at step

three." *Tyson v. Kijakazi*, 1:21-CV-855, 2022 WL 3975002, at *10 (M.D. Pa. July 25, 2022), *report and recommendation adopted*, 2022 WL 3971041 (M.D. Pa. Aug. 31, 2022)).  SSR 19-4p provides that "a primary headache disorder, alone or in combination with another impairment(s)" may "medically equal[ ] a listing."  *SSR 19-4p*, 2019 WL 4169635 at *7.  SSR 19-4p identifies Listing 11.02, which addresses epilepsy, as "the most closely analogous listed impairment" for a primary headache disorder.  *Id.*  More specifically, SSR 19-p4 provides that "[w]hile uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) [medically determinable impairment(s)] medically equals the listing."  *Id.*  "Thus, an ALJ should look to Listings 11.02B and 11.02D in assessing whether a claimant's migraine headache impairment medically equals a listing."  *Tyson*, 2022 WL 3975002 at *10.

"Listing 11.02B describes dyscognitive seizures 'occurring at least once a week for at least 3 consecutive months ... despite adherence to prescribed treatment.'"  *Falardo-Weller v. Kijakazi*, NO. 3:22-CV-01026, 2023 WL 6119101, *6 (M.D. Pa. Sept. 18, 2023) (quoting 20 C.F.R. Part 404, Subpart P, App.1, § 11.02B).  In evaluating a claimant with migraines, an ALJ should look to the following factors to determine whether that impairment medically equals listing 11.02B:

[(1)] A detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); [(2)] the frequency of headache events; [(3)] adherence to prescribed treatment; [(4)] side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and [(5)] limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4P, 2019 WL 4169635 at *7.

Listing 11.02D, on the other hand, "requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one" of the following: "physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; or adapting or managing oneself." *Id.* In evaluating Listing 11.02D, ALJs will also consider "the same factors ... consider[ed] for 11.02B[.]" *Id.*

Here, at step three, the ALJ's analysis of Ms. B.'s migraines is limited to the following:

While headaches/migraines are not a listed impairment, the undersigned has specifically considered whether the claimant's condition meets or equals the requirements of any pertinent physical or mental listing in accordance with

- 14 -

> SSR 19-4p. However, the signs, symptoms and laboratory findings of the claimant's condition are not of such severity as found in any listing.

(Doc. 5-2 at 21).  The ALJ did not discuss or cite Listing 11.02B or 11.02D in addressing Ms. B.'s migraines.  While it is "preferable for an ALJ to 'specifically identify the listed impairments under consideration," that "omission, standing alone, is not dispositive." *Tyson*, 2022 WL 3975002, at *10 (quoting *Arroyo v. Comm'r of Soc. Sec.*, 155 F. App'x 605, 608 (3d Cir. 2005).  Rather, we must consider whether the "ALJ's decision clearly analyzes and evaluates the relevant medical evidence as it relates to the Listing requirements." *Scuderi v. Comm'r of Soc. Sec.*, 302 F. App'x 88, 90 (3d Cir. 2008) (emphasis added).

Thus, we consider the ALJ's analysis of Ms. B.'s migraines later in the decision.  The ALJ summarized Ms. B.'s testimony with respect to her migraines as follows:

> The claimant testified that she is has cognitive issues when she has a migraine; and she has trouble standing, walking, and reading. The claimant testified that she has vestibular migraines several days a week, which cause dizziness and vomiting; she has abdominal migraines; and she has ocular migraines. The claimant testified that she takes medication for her migraines; sounds, scents, weather, some foods, and some drinks exacerbate her migraines; and sleep, cold compresses, and peppermint essential oil help her migraines.

(Doc. 5-2 at 23).  The ALJ subsequently noted that, "After careful consideration of

the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id*. at 24).

Later in the decision, the ALJ summarized the medical evidence.  Regarding migraines, the ALJ cited a July 26, 2021 examination for migraines where Ms. B. reported having headaches consistent with migraines since early childhood, but noted that they had gradually worsened especially over the past two years.  (*Id*.).  It was noted that Ms. B. used Fioricet excessively and that this medication over-use likely contributed to her current headache problems.  (*Id*.).  The ALJ then noted that during a July 28, 2021 office visit, Ms. B. reported dizziness occurring with migraines.  (*Id*.).  She indicated at this visit, however, that she was seeing a neurologist for migraines.  (*Id*.).  During a November 18, 2021 follow-up appointment, the ALJ noted that Ms. B. reported much better control of migraines on Aimovig.  (*Id*.).  The ALJ then referenced a January 19, 2022 visit where Ms. B. reported a moderate reduction in headache severity and frequency over the past few months, averaging 5-10 migraine headache days.  (*Id*. at 25).  The ALJ also noted that Ms. B. was diagnosed with chronic migraine without aura without status-migrainous.  (*Id*.).  The ALJ stated that during a neurology follow-up on May 24,

2022, Ms. B. denied any significant changes to the nature, severity, or frequency of her headaches since the prior appointment. (*Id*.). However, Ms. B. reported that since starting the higher dose of propranolol, she continued with an increase in lightheadedness/dizziness episodes. (*Id*.). The ALJ then referenced a September 27, 2022 follow-up appointment during which Ms. B. presented with complaints of increased dizziness, nausea, and migraine severity with rebound headaches since starting Nurtec every other day dosing. The ALJ also noted that on November 22, 2022, Ms. B. reported that her headaches had improved after stopping contraception. (*Id*.). The ALJ added that in December 2022, Ms. B. received her first round of Botox injections, and on December 22, 20222, she reported that her migraines were better controlled on Aimovig. (*Id*.). Finally, the ALJ stated that on March 2, 2023, during an office visit for her second round of Botox injections, she reported a moderate improvement in her headache severity.

We cannot say that substantial evidence supports the ALJ's conclusion that Ms. B.'s migraines do not meet or equal a listing. Unfortunately, the ALJ's failure to specifically reference and discuss Listings 11.02B and 11.02D significantly hinders our ability to perform a meaningful review of that conclusion. However, consideration of the medical evidence discussed by the ALJ as well as evidence in the medical record that was not discussed suggests that Ms. B.'s migraines may be sufficient to meet or equal a listing.

The frequency requirement in Listing 11.02B provides that the migraines must occur "at least once a week for at least 3 consecutive months." *Tyson*, 2022 WL 3975002, at *11 (citing 20 C.F.R. Part 404, Subpart P, App.1, § 11.02B; *see also Corey Z. v. Saul*, No. 18 CV 50219, 2019 WL 6327427, at *4 (N.D. Ill. Nov. 26, 2019) ("Courts analyzing migraine headaches under listing 11.02 have found that equivalence can be shown where migraines occur at these time intervals despite prescribed treatment.") (citation omitted)).  The ALJ referenced a January 19, 2022 visit where Ms. B. reported a moderate reduction in headache severity and frequency over the past few months, averaging 5-10 migraine headache days per month.  (*Id*. at 25).  While the ALJ indicated that Ms. B. reported improvement during a March 2023 appointment, those records indicate that Ms. B. was still reporting "8+ migrainous headache days per month." (Doc. 5-7 at 344).  And records from a prior appointment three months earlier in December 2022 likewise indicate that Ms. B. reported "8+ migrainous headache days per month."  (*Id*. at 347).  Thus, for at least three months – December 2022 through March 2023 – Plaintiff appears to have satisfied the frequency requirement.

Listing 11.02B also requires that the migraines persisted notwithstanding "adherence to prescribed treatment."  20 C.F.R. Part 404, Subpart P, App.1, § 11.02B.  Aside from a reference to a July 26, 2021 note that indicated that Ms. B.'s overuse of Fioricet likely contributed to her headache issues, we are not aware of

any additional evidence suggesting that Ms. B. did not adhere to her treatment regimens.   Rather, it appears as though she consistently sought treatment and attempted many different medication and therapy regimens in an effort to control her condition.   As this court has explained when considering similar facts, "[t]he explanatory comments for the neurological listings discuss how the Commissioner will "consider adherence to prescribed treatment":

> "Despite adherence to prescribed treatment" means that you have taken medication(s) or followed other treatment procedures for your neurological disorder(s) as prescribed by a physician for three consecutive months but your impairment continues to meet the other listing requirements despite this treatment. You may receive your treatment at a health care facility that you visit regularly, even if you do not see the same physician on each visit.

*Tyson*, 2022 WL 3975002, at *13 (quoting 20 C.F.R. Part 404, Subpart P, App.1, § 11.00C).   In *Tyson*, the court concluded that notwithstanding reference by the ALJ to the plaintiff's overuse of a certain medication, "[t]here was no evidence that [plaintiff] failed to take her prescribed medications or failed to try any other treatment procedures recommended by her doctors." 2022 WL 3975002, at *14.  To the contrary, consistent with physician recommendations, the plaintiff in that case tried Botox and multiple different medications over the years.  *Id*.  Likewise here, neither the ALJ nor the Commissioner has cited to any evidence suggesting that Ms.

B. failed to take her prescribed medications or failed to try other treatment procedures recommended by her physicians.

Thus, the record evidence tends to suggest Ms. B. may meet the requirements of Listing 11.02B. However, the ALJ's failure to "evaluate on the record the applicability of 11.02B and D . . . 'prevents the Court from conducting a meaningful, albeit deferential review.'" *Fewell v. O'Malley*, CIV. No. 1:23-cv-00865, 2024 WL 4182115, at *6 (M.D. Pa. Aug. 19, 2024) (quoting *Falardo-Weller v. Kijakazi*, No. 3:22-CV-01026, 2023 WL 6119101, *6 (M.D. Pa. Sept. 18, 2023). Because of this error, we recommend that the decision be vacated. *See Tyson*, 2022 WL 3975002, at *15 (similarly vacating decision based upon inability to conduct meaningful review of finding that plaintiff's migraines did not meet or equal a listing); *Fewell*, 2024 WL 4182115, at *6 (same).

## B. PLAINTIFF'S REMAINING ARGUMENTS

Because it will be recommended that the decision of the Commissioner be vacated and remanded for further consideration so that the ALJ may properly consider Listings 11.02B and 11.02D, Plaintiff's remaining arguments need not be addressed. "A remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. 2016). Evaluation of Plaintiff's additional contentions would be futile given that the ALJ's reconsideration of Plaintiff's limitations may yield a different result.

- 20 -

C. REMEDY

The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). *See generally Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Because the ALJ's decision was not supported by substantial evidence, the undersigned United States Magistrate Judge respectfully recommends that further development of the record is required, and that the decision of the Commissioner be vacated and that the case be remanded.

## 5. RECOMMENDATION

Based on the foregoing, pursuant to sentence four of 42 U.S.C. § 405(g), it is recommended that the Commissioner's decision be **vacated** and that the case be **remanded** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence. It is further recommended that the Clerk of Court be directed to **CLOSE** this case.

**Dated:** January 28, 2026

_s/ Leo A. Latella_
**LEO A. LATELLA**
**United States Magistrate Judge**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

AMY B.,

               Plaintiff,

    v.

FRANK BISIGNANO,

               Defendant.

CIVIL ACTION NO. 1:24-CV-02091

(MEHALCHICK, J.)
(LATELLA, M.J.)

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated January 28, 2026.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or

- 23 -

where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated:** January 28, 2026                     *s/ Leo A. Latella*
                                                **LEO A. LATELLA**
                                                **United States Magistrate Judge**